UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **VONDA JAMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 7:23-cv-1557-ACA |
| ) | |
| **PENNEY OPCO, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM OPINION

Back in 2017, Plaintiff Vonda James filed a bankruptcy petition. (*See* doc. 9-2). The petition required Ms. James to disclose any potential claims she had against third parties, including employment disputes or rights to sue. (*Id*. at 15). Ms. James indicated that she had no such claims. (*See id*.).

Five years later and while her bankruptcy proceedings were ongoing, Ms. James filed a charge of discrimination against her employer Defendant Penney OPCO, LLC ("JCPenney"). (Doc. 1-1). Although Ms. James had previously amended her filing in the bankruptcy proceedings (doc. 9-4), Ms. James did not amend her petition to disclose her charge of discrimination (*see* doc. 9-6). And the bankruptcy court discharged Ms. James's bankruptcy proceedings before Ms. James received her notice of right to sue. (*Compare* doc. 9-5, *with* doc. 1-3). Ms. James has

not moved to reopen her bankruptcy proceedings to disclose the employment dispute, EEOC charge, notice of right to sue, or this lawsuit.

JCPenney now moves to dismiss, arguing that Ms. James is judicially estopped from seeking damages in this action due to her failure to disclose her pending charge of discrimination in the bankruptcy proceedings. (Doc. 9). JCPenney presented evidence that Ms. James's nondisclosure was intentional, and Ms. James has presented no evidence of a contrary intent; accordingly, the court **WILL GRANT** JCPenney's motion and **WILL DISMISS** this action **WITH PREJUDICE**.

I. BACKGROUND

The procedural vehicle for JCPenney's motion is not clear because JCPenney invokes only "Rule 12 of the Federal Rules of Civil Procedure." (*See* doc. 9 at 1). Judicial estoppel is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . ."); *see also Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 (11th Cir. 2019) (explaining that "[j]udicial estoppel is an equitable defense to a civil action" which requires the defendant to prove certain elements); *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) (referring to

the equitable defense of laches as an "affirmative defense[]").[1] And Rule 12 generally requires litigants to assert defenses in an answer. Fed. R. Civ. P. 12(b); *see also* Fed. R. Civ. P. 8(b)–(c) (describing the requirements for an answer); *but see New Hampshire v. Maine*, 532 U.S. 742, 756 (2001) (granting a defendant's motion to dismiss based on judicial estoppel in a case that arose under the Supreme Court's original jurisdiction).

But Rule 12(b) allows for "the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19." Fed. R. Civ. P. 12(b). Accordingly, the court construes JCPenney's motion as one under Rule 12(b)(6) because that is the sole exception that could apply.

"Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc*, 764 F.2d 1400 (11th Cir. 1985). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

face of the complaint." *Quiller*, 727 F.2d at 1069; *Concordia*, 693 F.2d at 1075 (applying this rule to a res judicata affirmative defense).

But here, JCPenney does not rely exclusively on the allegations in Ms. James's complaint and instead presents the court with evidence of her bankruptcy proceedings. (*See* docs. 9-2 to 9-10). Although it is "well-established" that the court cannot consider matters outside the pleadings when a party moves to dismiss under Rule 12(b)(6), the court may consider judicially noticed documents such as court records. *Concordia*, 693 F.2d at 1075–76; *see also*, *e.g.*, *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of [other] courts."); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider . . . other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, . . . matters of which a court may take judicial notice."); Fed. R. Evid. 201(d) (permitting a court to take judicial notice of adjudicative facts "at any stage of the proceedings"). But the court cannot take judicial notice of court records "for the truth of the matters asserted in the other litigation," instead the court may judicially notice court filings "only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quotation marks omitted).

Just as JCPenney does not explain the procedural vehicle for its motion, it does not explain how the court can take judicial notice of the statements and filings from Ms. James's bankruptcy proceedings. (See doc. 9-1). And Ms. James does not object to the court's consideration of this evidence. (See doc. 13). The court will judicially notice the following facts regarding Ms. James's experience as a Chapter 13[2] debtor:

Ms. James filed her first Chapter 13 bankruptcy petition in 1996 and a second in 2012. (*See* docs. 9-7 to 9-8). Ms. James disclosed that she had a pending lawsuit when prompted to disclose "[o]ther . . . claims of every nature" in her 2012 petition (*See* doc. 9-8 at 11). And while her 2012 bankruptcy proceedings were ongoing, Ms. James amended her filing to disclose the settlement from that lawsuit. (Doc. 9-10 at 2). In 2015, Ms. James filed her third Chapter 13 bankruptcy petition. (Doc. 9-9). And in 2017, Ms. James filed her fourth Chapter 13 bankruptcy petition. (Doc. 9-2).

In her 2017 petition, Ms. James was prompted to disclose whether she had "[c]laims against third parties, whether or not [she] ha[d] filed a lawsuit or made a demand for payment." (*Id*. at 15). As examples, the form listed "employment

---

[2] "[A] debtor who proceeds under Chapter 13 may keep [her] prepetition property but must repay [her] creditors over time, generally from what [she] earns after filing bankruptcy." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1179 (11th Cir. 2017) (en banc). Generally, a Chapter 13 bankruptcy case proceeds as follows: (1) the "debtor proposes a plan to repay [her] debts over a three- or five-year period;" (2) if the proposal complies with the bankruptcy code, the bankruptcy court confirms the plan; (3) "the trustee . . . collects a portion of the debtor's wages through payroll deduction and then distributes the withheld wages to the creditors at the plan's conclusion;" and (4) "[i]f the debtor completes [her] payments under the plan, [her] debts are discharged." *Id*.

5

disputes . . . or rights to sue." (*See id*.). Ms. James responded that she had no such claims. (*Id*.).

After filing her petition, Ms. James also filed a Chapter 13 plan. *See In re: Vonda Yvette James* (Doc. 2), Case No. 17-70300-JHH13 (N.D. Ala.) ("*2017 Bankruptcy*"). In her plan, Ms. James proposed (1) paying for student loans directly and outside the bankruptcy plan and (2) repaying 100% of "all timely filed and allowed claims" of her creditors (secured, priority, and unsecured) with 5% interest. *See 2017 Bankruptcy* (*id*.). The bankruptcy court confirmed Ms. James's plan and subsequent modifications. *See 2017 Bankruptcy* (doc. 70 at 1 ¶¶ 2–3) (summarizing the procedural history of Ms. James's 2017 bankruptcy proceedings). Although Ms. James disclosed many creditors in her bankruptcy petition (*see* doc. 9-2 at 21–28), very few creditors submitted written claims to the bankruptcy court, *see 2017 Bankruptcy* (doc. 70 at 1–2) (detailing which creditors submitted claims and the amount paid to each creditor).

In late 2018 or 2019 and while Ms. James's 2017 bankruptcy proceedings were ongoing, JCPenney hired Ms. James as sales associate. (*Compare* doc. 1-1 at 1) ("I was hired by the above-named employer in 2019 . . . ."), *with* (doc. 1 ¶ 15) ("In or around late 2018, [Ms.] James began working for [JC]Penney's . . . ."). Ms. James then amended her bankruptcy petition to disclose changes to her gross income due to this employment (*compare* doc. 9-2 at 32 ¶ 8(h), *with* doc. 9-4 at 2

6

¶ 8(h)) as well as other changes to her expenses, assets, liabilities, and statistical information (*e.g.*, *compare* doc. 9-2 at 34 ¶ 17(c), *with* doc. 9-4 at 5 ¶ 17(c); *see also* doc. 9-4).

In late 2021, Ms. James experienced a workplace incident in which she was the target of racial slurs and innuendos. (*See* doc. 1 ¶¶ 16–17, 19–49). After Ms. James complained to her store manager about the experience, Ms. James's assigned shifts at the store decreased substantially. (*Id*. at 50–51). On February 28, 2022, Ms. James filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) based on these events. (*See* doc. 1-1). Ms. James did not amend her bankruptcy petition to disclose the employment dispute she now had with JCPenney. (*See* doc. 9-6; *but see* doc. 9-2 at 15).

On September 20, 2022, the bankruptcy trustee notified the bankruptcy court that Ms. James "ha[d] completed [her] Chapter 13 [p]lan." *2017 Bankruptcy* (doc. 69). The bankruptcy court subsequently entered an order discharging Ms. James's debts (doc. 9-5) and closed the 2017 bankruptcy case on November 14, 2022 (doc. 9-6).

In August 2023, the EEOC issued its notice of determination and right to sue. (*see* doc. 1-3), and Ms. James initiated this lawsuit against JCPenney (doc. 1).

## II.    DISCUSSION

JCPenney invokes the doctrine of judicial estoppel, contending that Ms. James's failure to disclose the charge of discrimination that she filed with the EEOC during the bankruptcy proceedings precludes her claim. (Doc. 9). Judicial estoppel is an equitable doctrine that gives the court discretion to dismiss a party's claims. *Slater*, 871 F.3d at 1180. "A district court may apply judicial estoppel when a two-part test is satisfied: the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Id*. (footnote omitted). [3]

JCPenney has carried its burden at the first step: Ms. James's statement that she had no potential claims against any third party, subsequent filing of an EEOC charge, and failure to amend her petition accordingly are "inconsistent position[s] under oath." *See id*. at 1181; *Smith*, 940 F.3d at 643; *Robinson*, 595 F.3d at 1274–75. Accordingly, the court proceeds directly to the second injury: whether Ms. James "intended to make a mockery of the judicial system." *Slater*, 871 F.3d at 1180.

---

[3] The parties do not dispute that the oath requirement is satisfied. Ms. James signed her bankruptcy petition and EEOC charges under penalty of perjury. (Doc. 9-2 at 45; doc. 1-1 at 1; doc. 1-2 at 1). And failing to update a bankruptcy schedule to reflect a newly filed claim is effectively the same as failing to disclose that claim in the first instance. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274–75 (11th Cir. 2010); *Smith*, 940 F.3d at 643 ("That duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend her financial statements if circumstances change.") (quotation marks omitted; alterations accepted).

"When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures," this court must consider "all the facts and circumstances of the particular case," including (1) "the plaintiff's level of sophistication," (2) "whether and under what circumstances the plaintiff corrected the disclosures," (3) "whether the plaintiff told [her] bankruptcy attorney about the civil claims before filing the bankruptcy disclosures," (4) "whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures," (5) "whether the plaintiff identified other lawsuits to which [she] was party," and (6) "any findings or actions by the bankruptcy court after the omission was discovered." *Slater*, 871 F.3d at 1185. These factors are "not exhaustive," and this court "is free to consider any fact or factor it deems relevant to the intent inquiry." *Id*. at 1185 n.9. JCPenney makes arguments about only Factors One, Two, Four, Five, and Six. (*See* doc. 9-1 at 9–10).

Factor One: JCPenney argues that Ms. James's experience in bankruptcy proceedings coupled with her retention of counsel suggests she is a sophisticated debtor. (*Id*.). Ms. James does not respond to this argument. (*See* doc. 13). The court agrees with JCPenney.

Since 1996, Ms. James has filed at least four Chapter 13 bankruptcy proceedings which supports an inference she knows creditors are paid with post-petition earnings. (Docs. 9-2, 9-7 to 9-9). Ms. James had the benefit of counsel

9

during the entirety of her 2017 bankruptcy petition. (*See* doc. 9-2 at 51; doc. 9-4 at 9; *see also* doc. 9-6) (providing no indication that Ms. James's counsel moved to withdraw). The court concludes that Ms. James is a sophisticated debtor who did not misunderstand her disclosure obligations and who understood the effect of a failure to disclose. *Compare Slater*, 871 F.3d at 1186 (observing that a *pro se* debtor might misunderstand the bankruptcy court's disclosure obligations thereby negating "inten[t] to misuse the judicial process"), *with Weakley v. Eagle Logistics*, 894 F.3d 1244, 1246–47 (11th Cir. 2018) (affirming the reasoning of a district court that "took into account the fact that [the debtor] had filed four other bankruptcy petitions, demonstrating that he should have been familiar with the requirements") (quotation marks omitted; alterations accepted).

Factor Five: JCPenney argues that Ms. James's filings before the bankruptcy court indicate that Ms. James intended to circumvent the disclosure requirements because Ms. James disclosed a potential legal claim in one of her previous bankruptcy proceedings and amended her filings in the 2017 bankruptcy proceedings to disclose changes in her employment among other things. (Doc. 9-1 at 10). In response, Ms. James focuses on the timing of her proceedings, arguing that because her bankruptcy case was closed before she filed her complaint, judicial estoppel should not apply. (*See* doc. 13 at 8).

First, the court rejects Ms. James's suggestion that judicial estoppel applies exclusively in cases where a plaintiff has "a concurrent open bankruptcy case and an open civil action." (*Id*.). In *Smith*, a debtor filed for Chapter 13 bankruptcy and indicated that she had no contingent or unliquidated claims against third parties. 940 F.3d at 639. The bankruptcy court closed the debtor's case more than a year before the debtor filed a lawsuit against her former employer, alleging claims associated with the conditions of her employment. *See id*. The Eleventh Circuit nevertheless remanded the case for the district court to consider whether judicial estoppel applied. *See id*. at 646.

"Under the law of this circuit, the duty to amend applies to Chapter 13 petitioners even after" the bankruptcy court confirms the debtor's plan. *Id*. at 643. And the bankruptcy court retains broad discretion to reopen a closed case on a motion of the debtor or another party in interest "to administer" an asset that had not previously been scheduled. 11 U.S.C. § 350(b). So the court is unpersuaded that judicial estoppel is inapplicable here merely because the bankruptcy court closed Ms. James's case before Ms. James filed her complaint in this court.

And the court is persuaded by JCPenney's argument that Ms. James's failure to disclose her potential claim demonstrates an intent to deceive due to her disclosures in a previous bankruptcy proceeding as well as in the 2017 bankruptcy proceeding. (*See* doc. 9-1 at 10). In her 2012 bankruptcy proceeding, Ms. James

11

disclosed a pending civil action in her bankruptcy petition (doc. 9-8 at 25) and later filed an amended petition to disclose the settlement in that case (*see* doc. 9-10 at 2). And in her 2017 bankruptcy proceeding, Ms. James amended her filings to disclose, among other things, that she had obtained part-time employment with JCPenney. (*Compare* doc. 9-2 at 32 ¶ 8(h), *with* doc. 9-4 at 2 ¶ 8(h); *see also* doc. 9-4).

Despite this demonstrated history of amending her filings, Ms. James never amended her bankruptcy petition to disclose (1) the initial employment dispute she had with JCPenney or (2) that she eventually filed an EEOC charge against JCPenney. (*See* doc. 9-6; *but see* doc. 9-2 at 15). Ms. James has provided no meaningful explanation for this failure to amend her bankruptcy petition. (*See* doc. 13). The court therefore concludes that Ms. James intentionally chose not to amend her bankruptcy petition to mislead the bankruptcy court. *See Weakley*, 894 F.3d at 1246 (affirming a district court that considered the debtor's history of disclosures to find that a nondisclosure was intentional).

Factors Two, Four, and Six: JCPenney's remaining arguments are about Factors Two, Four, and Six and share a common premise. According to JCPenney, because Ms. James never corrected the nondisclosure during or after the close of her bankruptcy proceedings (Factor Two), her nondisclosure precluded the trustee and creditors from discovering this potential asset (Factor Four) and prevented the bankruptcy court from making any findings about that potential asset (Factor Six).

(Doc. 9-1 at 10). Ms. James responds that because her EEOC charge is not itself a claim for monetary damages, her creditors were not harmed. (*See* doc. 13 at 8). The court rejects Ms. James's argument.

Ms. James filed a Chapter 13 bankruptcy petition (*see* doc. 9-2 at 2); "[t]he amount of proceeds that creditors receive in a Chapter 13 bankruptcy is dictated by the confirmed plan, and a debtor's payments under the plan are generally based upon the debtor's expected future earnings." *Slater*, 871 F.3d at 1188. And "the value of a civil claim is taken into account in formulating and reviewing the plan." *See id*. Although an EEOC charge is not itself a claim for monetary damages, the petition asked Ms. James to disclose any potential third-party claims "whether or not" she sought monetary damages because the value of that potential claim can be taken into account to formulate her plan. (Doc. 9-2 at 15); *Slater*, 871 F.3d at 1188. The court agrees with JCPenney's general argument that a failure to disclose this value affects plan calculations. (Doc. 9-1 at 10).

Because judicial estoppel is an equitable doctrine, the court may exercise its discretion to consider "*all* the facts and circumstances of the particular case." *Slater*, 871 F.3d at 1180 n.4, 1185 (emphasis added). Although Ms. James did not explicitly emphasize this fact (*see* doc. 13), the court is mindful that in Ms. James's bankruptcy proceedings, very few creditors submitted claims. (*Compare* doc. 9-2 at 21–28), *with 2017 Bankruptcy* (doc. 70 at 1–2) (detailing which creditors submitted claims and

the amount paid to each creditor). And Ms. James paid 100% of the claims submitted by those creditors. *2017 Bankruptcy* (doc. 69).

Undeniably, the deadline for proof of claims had expired by the time Ms. James filed her charge with the EEOC, *2017 Bankruptcy* (doc. 5), but a creditor can nevertheless submit and receive payment on an untimely claim, *see* 11 U.S.C. § 502(a) (indicating that untimely claims may be allowed if no party in interest objects). So Ms. James's nondisclosure could have influenced creditor determinations regarding whether to file claims at all. The purpose of judicial estoppel "is to protect the integrity of the [bankruptcy] court" and the bankruptcy process. *Smith*, 940 F.3d at 643; *see also id*. at 644 (observing that nondisclosures "deceive[]" the bankruptcy court and "manipulate[]" bankruptcy proceedings). Ms. James's nondisclosure manipulates that process even if no actual harm ensued. *See id*. at 643.

In sum, JCPenney has presented evidence that Ms. James knew her disclosure obligations, that her nondisclosure of her potential claim was intentional based on Ms. James's previous bankruptcy filings, and that Ms. James had a motive to not disclose her potential asset. (*See* doc. 9-1 at 9–10). In response, Ms. James does not present evidence of a contrary intent and instead generally argues that her creditors were not harmed because an EEOC charge is not a claim for monetary damages and her bankruptcy case had been closed before she filed her civil lawsuit. (Doc. 13 at

8). The court rejects Ms. James's arguments. Accordingly, the court **WILL GRANT** JCPenney's motion and **WILL DISMISS** this action **WITH PREJUDICE**.

### III.   CONCLUSION

The court **WILL GRANT** JCPenney's motion and **WILL DISMISS** this action **WITH PREJUDICE**. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 22, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE